1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11
                             ----oo0oo----
12

13   LOUIS MOCETTINI,                  CIV. NO. 2:13-01300 WBS DAD

14              Plaintiff,             MEMORANDUM AND ORDER RE: MOTION
                                       FOR SUMMARY JUDGMENT
15        v.

16   KENWORTH TRUCK COMPANY, A
     DIVISION OF PACCAR, INC., AND
17   DOES 1 THROUGH 25, INCLUSIVE,

18              Defendants.

19

20                           ----oo0oo----

21        Plaintiff Louis Mocettini brought this action against

22   defendant Kenworth Truck Company, a division of PACCAR, Inc.,

23   after a grab handle he used to enter and exit a truck

24   manufactured by defendant allegedly rolled in his grip and caused

25   him to fall from the vehicle.  Plaintiff seeks damages for his

26   resulting injuries under parallel theories of negligence and

27   strict products liability.  Defendant now moves for summary

28   judgment pursuant to Federal Rule of Civil Procedure 56.

                                  1

1  I.    Factual and Procedural History

2            On April 7, 2011, plaintiff was employed by Reliable

3  Trucking ("Reliable") as a driver of commercial trucks.

4  (Mocettini Dep. at 29:8-10 (Docket No. 42-1).)  Because his

5  regularly assigned truck was being serviced, Reliable assigned

6  plaintiff to drive truck 15039 for the first time that day.  (See

7  id. at 29:11-30:6.)  Reliable had purchased truck 15039 in March

8  2006 from defendant, who manufactured it in January 2006.

9  (Lalley Dep. at 14:24-25 (Docket No. 42-14); Ferderer Dep. at

10  38:24-39:1 (Docket No. 42-9).)  The truck featured a grab handle

11  located next to the driver's door to aid truck operators in

12  entering and exiting the cab of the vehicle.  (Ferderer Dep. at

13  57:16-58:4.)  The grab handle's design consisted of three

14  elements: (1) a long, cylindrical steel tube, (2) two aluminum

15  brackets located at either end of the tube, and (3) set screws

16  that ran through the brackets and pressed against the tube.

17  (Id.; see Perlee Decl. Ex. 10 (Docket No. 42-10).)  When fully

18  tightened, the screws were designed to hold the tube in place by

19  pushing against it and creating a friction bond.  They did not

20  penetrate it.  (Id.)

21            That day, plaintiff allegedly used the grab handle to

22  enter and exit the vehicle three times without incident.  (See

23  Mocettini Dep. at 50:6-52:2, 99:4-17.)  On the fourth time,

24  however, the driver's side grab handle allegedly spun in his

25  hand, causing him to lose his grip and fall backwards.  (Id. at

26  65:1-14, 67:4-25.)

27            After plaintiff reported what had happened, two

28  Reliable employees checked the grab handle and found that they

1  were able to spin the steel tube in their hands.  (See Lalley

2  Dep. at 31:10-32:2; Maesetto Dep. at 24:20-24 (Docket No. 42-

3  15).)  To prevent future spinning, one employee drilled holes

4  through the mounting brackets and the tube, then inserted

5  additional sheet metal screws to affix the tube to the brackets.

6  (See Lalley Dep. at 31:10-32:18; Maesetto Dep. at 12:12-16:9,

7  18:17-19:16, 23:10-24:24.)

8       Two years later, on November 13, 2013, experts employed

9  by both parties disassembled and examined the grab handle in

10 anticipation of this action.  (See Frederer Dep. at 18:8-13,

11 66:9-67:14 (Docket No. 36-4); Buske Dep. at 51:7-52:24 (Docket

12 No. 42-3); Kelkar Dep. at 31:4-32:10 (Docket No. 42-12).)  They

13 found marks on the steel tube suggesting that it had rotated more

14 than once.  (See id.)  The parties dispute whether these marks

15 show that the tube had rotated prior to the day of plaintiff's

16 fall or were made thereafter.  (See Def.'s Mem. at 1 (Docket No.

17 34); Pl.'s Opp'n at 6 (Docket No. 39).)[1]  The parties also found

18 that one of the handle's set screws was missing at the time of

19 inspection.  (See Buske Dep. at 32:17-20.)  Plaintiff does not

20 know whether the screw was missing at the time of his injury.

21 (Pl.'s Resp. to Def.'s First Req. for Admis. No. 4.)

22      On April 3, 2013, plaintiff filed a Complaint alleging

23 negligence and strict products liability claims against defendant

24 in the Superior Court of the State of California.  (Notice of

25       [1]   Plaintiff claims that defendant's expert, Jake
26 Ferderer, testified that it was impossible to tell whether the
   marks were made before or after plaintiff's fall.  (Pl.'s Opp'n
27 at 6-7.)  Ferderer appears to say that the marks were made before
   the accident, but said he could not determine how long before.
28 (See Frederer Dep. at 67-68.)

1  Removal ¶ 1 (Docket No. 1-1); Compl. at 1-3.)  Defendant removed
2  the action to federal court on the basis of diversity
3  jurisdiction pursuant to 28 U.S.C. § 1441, certifying that it
4  meets the requirements of 28 U.S.C. § 1332 because plaintiff is a
5  resident of California, defendant is a Delaware corporation with
6  its principal place of business in Bellevue, Washington, and the
7  action exceeds the amount-in-controversy requirement.  (Notice of
8  Removal ¶¶ 3, 6-8).  Defendant seeks summary judgment on each of
9  those claims.

10  II.  Legal Standard for Summary Judgment

11      Summary judgment is proper "if the movant shows that
12  there is no genuine dispute as to any material fact and the
13  movant is entitled to judgment as a matter of law."  Fed. R. Civ.
14  P. 56(a).  A material fact is one that could affect the outcome
15  of the suit, and a genuine dispute is one that could permit a
16  reasonable jury to enter a verdict in the non-moving party's
17  favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
18  (1986).  The party moving for summary judgment bears the initial
19  burden of establishing the absence of a genuine issue of material
20  fact and can satisfy this burden by presenting evidence that
21  negates an essential element of the non-moving party's case.
22  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
23  Alternatively, the moving party can demonstrate that the non-
24  moving party cannot produce evidence to support an essential
25  element upon which it will bear the burden of proof at trial.
26  Id.

27      Once the moving party meets its initial burden, the
28  burden shifts to the non-moving party to "designate 'specific

4

1   facts showing that there is a genuine issue for trial.'" Id. at

2   324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,

3   the non-moving party must "do more than simply show that there is

4   some metaphysical doubt as to the material facts." Matsushita

5   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

6   "The mere existence of a scintilla of evidence . . . will be

7   insufficient; there must be evidence on which the jury could

8   reasonably find for the [non-moving party]." Anderson, 477 U.S.

9   at 252.

10        In deciding a summary judgment motion, the court must

11   view the evidence in the light most favorable to the non-moving

12   party and draw all justifiable inferences in its favor.  Id. at

13   255.  "Credibility determinations, the weighing of the evidence,

14   and the drawing of legitimate inferences from the facts are jury

15   functions, not those of a judge . . . ruling on a motion for

16   summary judgment . . . ."  Id.

17   III. Discussion

18        Defendant makes three basic arguments in support of its

19   motion for summary judgment: (1) plaintiff cannot prove the grab

20   handle's design caused his injury, (2) plaintiff cannot prove

21   this particular risk was "known or knowable" at the time it

22   distributed the handle, and (3) plaintiff cannot prove the handle

23   differed from its intended design at the time it was made. (See

24   Def.'s Mem. at 8-14.)[2]

25        [2]   Plaintiff objects to the use of two pieces of evidence
26   in support of defendant's motion for summary judgment.  First,
    plaintiff contests any use of the "Preliminary Report of Phil
27   Smith," (Docket No. 36-8), on the ground that this report is
    inadmissible hearsay.  (Pl.'s Objections at 2-3 (Docket No. 41).)
28   Defendant appears to rely on this report solely for the

5

A. <u>Whether Defendant's Design Caused Plaintiff's Injury</u>

Plaintiff alleges that defendant violated its duty of care by negligently designing the truck's grab handle, (Compl. ¶¶ 1-8.), and that the distribution of defendant's defective grab handle design supports strict products liability, (Compl. ¶¶ 9-13).  Defendant seeks summary judgment on both these claims for essentially the same reason: plaintiff cannot prove that any alleged negligence or defective design defect caused his injuries.  (Def.'s Mem. at 9-10, 13-14.)

1. <u>California's Substantial Factor Test</u>

As an element of both negligence and strict liability claims, California law requires the plaintiff to prove that the defendant's conduct was a "substantial factor" in causing a plaintiff's injury.  <u>Rutherford v. Owens-Illinois, Inc.</u>, 16 Cal. 4th 953, 968 (1997) (stating that California has adopted the substantial factor test for cause-in-fact determinations); <u>see also</u> <u>Altman v. HO Sports Co.</u>, 821 F. Supp. 2d 1178, 1193 (E.D.

---

proposition that the three-piece grab handle design is not unique to defendant's trucks.  (<u>See</u> Def.'s Separate Statement in Supp. of Mot. for Summ. J. at 6 (Docket No. 35).)  Because the court finds that other genuine disputes of material fact exist as to plaintiff's design defect and failure to warn theories, the court need not consider the report or this specific proposition in reaching its ruling.  Second, plaintiff objects to the use of certain portions of the deposition of V. Paul Herbert on the basis that the subject matter of the testimony was not within Herbert's expertise.  (Pl.'s Objections at 3-4.)  The relevant portion discusses Herbert's opinion of markings found on the grab handle's tube.  (Herbert Dep. at 61:12-63:11 (Docket No. 36-6).)  Herbert's testimony may lend support to defendant's case, but it is not dispositive in summary adjudication because it does not negate the genuine disputes of material fact found elsewhere in the record.  Even assuming this testimony was proper, it would not affect the court's ruling.

6

1   Cal. 2011) (Ishii, J.) ("[A] manufacturer is liable only when a

2   defect in its product was a legal cause of injury, that is, when

3   the defect is a substantial factor in producing the injury."

4   (citing Soule v. Gen. Motors Corp., 8 Cal. 4th 548, 572 (1994)).

5   "The substantial factor standard is a relatively broad one,

6   requiring only that the contribution of the individual cause be

7   more than negligible or theoretical."   Bockrath v. Aldrich Chem.

8   Co., 21 Cal. 4th 71, 79 (1999) (quoting Rutherford, 16 Cal. 4th

9   at 978).

10          Experts employed by both parties testified that the

11  screws used in defendant's grab handle design will eventually

12  loosen over time as a consequence of the handle's use.   (See

13  Buske Dep. at 30:19-31:25; Kelkar Dep. at 15:2-10.)   Plaintiff's

14  expert, Scott Buske, testified in particular that "[defendant]

15  should anticipate that the truck is going to be driven down the

16  road and experience vibration and whatnot, and that a set screw

17  . . . might come loose and come out."   (Buske Dep. at 34:3-7.)

18  Loose set screws will allow the handle's tube to rotate--the

19  alleged cause of plaintiff's injury.   (Ferderer Dep. at 57:8-

20  58:4.)   At a minimum, this testimony raises a genuine dispute of

21  material fact as to whether defendant's design contributed as a

22  substantial factor in causing plaintiff's injury.

23          2. Reliance's Negligence, If Any, Does Not Supersede

24          Despite this evidence, defendant maintains that summary

25  judgment is still appropriate because a third party's

26  "superseding" actions absolve it of liability.   (Def.'s Mem. at

27  9-10.)   This argument requires the court to consider the

28  traditional distinction between the intervening and superseding

1  actions of a third party: "[A]n actor . . .  is not relieved of

2  liability because of the intervening act of a third person if

3  such act was reasonably foreseeable at the time of his negligent

4  conduct." Landeros v. Flood, 17 Cal. 3d 399, 411 (1976) (quoting

5  Vesely v. Sager 5 Cal. 3d 153, 163 (1971)).  However, a

6  superseding cause of injury breaks the chain of causation that

7  would otherwise flow from an initial actor's conduct, clearing

8  that initial actor of liability.  Hardison v. Bushnell, 18 Cal.

9  App. 4th 22, 27 (5th Dist. 1993).

10         An intervening force becomes a superseding cause if it

11  "is highly unusual or extraordinary, not reasonably likely to

12  happen and hence not foreseeable." Jackson v. Ryder Truck

13  Rental, Inc., 16 Cal. App. 4th 1830, 1848 (3d Dist. 1993)

14  (quoting 6 Witkin, Summary of Cal. Law § 975 (9th ed. 1988)).  It

15  is not enough to simply label a third party's intervening

16  behavior negligent; that negligence must be "highly

17  extraordinary." Stewart v. Cox, 55 Cal. 2d 857, 864 (1961)

18  ("[T]he fact that an intervening act of a third person is done in

19  a negligent manner does not make it a superseding cause if a

20  reasonable man . . . would not regard it as highly extraordinary

21  that the third person so acted . . . ."); see also Perez v. VAS

22  S.p.A., 188 Cal. App. 4th 658, 685 (2d Dist. 2010) ("[P]roduct

23  misuse may serve as a complete defense when the misuse was so

24  unforeseeable that it should be deemed the sole or superseding

25  cause." (internal quotation marks and citations omitted));

26  Martinez v. Vintage Petroleum, Inc., 68 Cal. App. 4th 695, 701

27  (2d Dist. 1998) ("[F]oreseeable intervening ordinary negligence

28  will not supersede but such negligence, if 'highly

8

1  extraordinary,' will supersede.").

2        Under California law, superseding cause is an

3  affirmative defense, and defendant has the burden of proving that

4  an intervening act was extraordinary enough to supersede.  See,

5  e.g., Maupin v. Widling, 192 Cal. App. 3d 568, 578 (2d Dist.

6  1987) ("[Defendant] had the burden to prove that Carlson's

7  behavior in accelerating was 'highly extraordinary' in order to

8  cut off liability." (quoting BAJI No. 3.79 (7th ed. 1986))).

9        Defendant argues that Reliable failed to ensure the

10  grab handle's screws remained tightened and that this failure

11  constitutes a superseding cause of plaintiff's injury because

12  "[i]t is not reasonable or foreseeable."  (Def.'s Mem. at 9-10.)

13  As its sole explanation for why the failure to tighten screws is

14  unforeseeable, defendant points to state and federal laws and

15  industry standards requiring owners to properly maintain their

16  vehicles.  (Id. at 9-10.)  But the fact that Reliable may have

17  violated some law or notion of professional conduct does not make

18  that violation per se unusual or extraordinary as a matter of

19  law.[3]  See Bigbee v. Pac. Tel. and Tel. Co., 34 Cal. 3d 49, 58

20        [3]  Defendant's contention that Yamaha Motor Corp. v.
21  Paseman, 219 Cal. App. 3d 958 (4th Dist. 1990), stands for this
   idea is simply incorrect.  (See Def.'s Reply at 5.)  Yamaha dealt
22  with superseding cause in the context of comparative fault and
   comparative indemnity.  Comparative fault and comparative
23  indemnity deal with the apportionment of loss between multiple
   defendants who have been found jointly liable for a particular
24  injury.  See Yamaha, 219 Cal. App. 3d at 966 (quoting Jaffe v.
   Huxley Architecture, 200 Cal. App. 3d 1188, 1191 (4th Dist.
25  1988)).  The Yamaha court stated that superseding causation
   premised on a third party's negligence may be considered in the
26  comparative indemnity context.  Id. at 966-72.  It did not hold
   that a third party's negligence will absolve a tortfeasor of
27  liability, as defendant appears to suggest.  (See Def.'s Reply at
   5 ("This holding applies to this case.").)
28
                                9

1    (1983) ("If the likelihood that a third person may act in a

2    particular manner is the hazard . . . which makes the actor

3    negligent, such an act whether innocent, negligent, intentionally

4    tortious, or criminal does not prevent the actor from being

5    liable for harm caused thereby.") (emphasis added).

6            And defendant has not otherwise shown as a matter of

7    law that the failure to tighten the grab handle's screws was so

8    unforeseeable or extraordinary that a reasonably thoughtful

9    person would not take it into account.  See id. at 57.

10   Accordingly, the court cannot conclude that negligence or misuse

11   on Reliance's part, if any, constitutes a superseding cause, and

12   it must deny defendant's request for summary judgment on these

13   claims.

14        B. Whether this Particular Risk was "Known or Knowable" at

15           the Time of Distribution

16            To prevail on a failure-to-warn claim in negligence or

17   strict products liability, plaintiffs must prove "that the

18   defendant did not adequately warn of a particular risk that was

19   known or knowable in light of the generally recognized and

20   prevailing best scientific and medical knowledge available at the

21   time of manufacture and distribution."  Anderson v. Owens-Corning

22   Fiberglas Corp., 53 Cal. 3d 987, 1002 (1991); see also Rosa v.

23   Taser Int'l, Inc., 684 F.3d 941, 946 (9th Cir. 2012) ("California

24   law places a duty on manufacturers to warn of a 'particular risk'

25   if it is 'known or knowable . . . at the time of manufacture and

26   distribution.'" (quoting Conte v. Wyeth, Inc., 168 Cal. App. 4th

27   89, 85 (1st Dist. 2008)) (emphasis omitted).  Under the

28   "knowable" element of this approach, "[a] manufacturer is held to

1    the knowledge and skill of an expert in the field; it is obliged

2    to keep abreast of any scientific discoveries and is presumed to

3    know the results of all such advances." <u>Carlin v. Superior</u>

4    <u>Court</u>, 13 Cal. 4th 1104, 1113 n.3 (1996).

5         The California Supreme Court has stressed the

6    requirement that a risk be "known or reasonably scientifically

7    knowable at the time of distribution," <u>Anderson</u>, 53 Cal. 3d at

8    999, because "eliminating the knowledge component had the effect

9    of turning strict liability into absolute liability," <u>id.</u> at 997

10   (discussing the evolution of the failure-to-warn claim in

11   California courts).  To place an obligation on manufacturers to

12   warn of unknown or unknowable risks would "recast the

13   manufacturer in the role of an insurer."  <u>Id.</u> at 998 (quoting

14   <u>Oakes v. E.I. Du Pont de Nemours & Co.</u>, 272 Cal. App. 2d 645,

15   650-51 (3d Dist. 1969)).

16        Defendant argues for summary adjudication on the basis

17   that there is no evidence that it had "actual or constructive

18   knowledge" that its grab handle could rotate.  (Def.'s Mem. at

19   14.)  The court disagrees.  Although the record contains no

20   evidence that defendant actually knew that its handles might

21   rotate, there is ample evidence to suggest that the risk was

22   reasonably "knowable" at the time of manufacture.  <u>See Anderson</u>,

23   53 Cal. 3d at 1002.  Defendant's expert, Rajeev Kelkar, testified

24   that set screws like those in defendant's design will not remain

25   tight over the life of a truck and that "the screws will at some

26   point start to loosen."  (Kelkar Dep. at 15:2-10.)  Plaintiff's

27   expert, Scott Buske, stated that "[defendant] should anticipate

28   that the truck is going to be driven down the road . . . and that

1   a set screw . . . which is only frictionally holding it . . .

2   might come loose and come out." (Buske Dep. at 34:3-7.) Given

3   that defendant has been using this grab handle design for 23

4   years, (Def.'s Mem. at 14), a trier of fact might use this

5   evidence to infer that defendant learned or could have reasonably

6   learned that screws might come loose before January 2006, when it

7   manufactured the truck in question.

8         The record also contains reason to conclude that the

9   risk of a set screw coming loose or the grab handle rotating was

10   "reasonably scientifically knowable." Carlin, 13 Cal. 4th at

11   1113 n.3. Buske testified that mechanical engineers prefer

12   designs that hold handles in place using "positive contact"--

13   "where something actually has to break or fail"--rather than a

14   frictional contact like the one employed in defendant's design.

15   (Buske Dep. at 31:18-25.) While this testimony does not

16   conclusively establish what a mechanical engineer would have

17   known in January 2006, it at least raises a genuine dispute of

18   material fact on the question.

19         Because the record contains genuine disputes of

20   material fact regarding whether defendant reasonably could have

21   known that its grab handle design would rotate, the court must

22   deny defendant's request for summary judgment on these claims.[4]

23

24        [4] Defendant also attempts to avoid liability by invoking

25   the "'sophisticated user' doctrine." (Def.'s Reply at 8.) The
court does not address this contention because defendant raised

26   this issue for the first time in its reply brief, depriving
plaintiff of the opportunity to address its argument. See

27   Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 250 n.1 (9th
Cir. 1992) (refusing to address an issue raised for the first

28   time in an appellant's reply brief).

1        C. <u>Whether Defendant's Grab Handle Differed from its</u>

2           <u>Intended Design</u>

3            A manufacturing defect occurs when "the defective

4    product is one that differs from the manufacturer's intended

5    result or from other ostensibly identical units of the same

6    product line." <u>Barker v. Lull Eng'g Co.</u>, 20 Cal. 3d 413, 429

7    (1978) (discussing differences between manufacturing defects and

8    design defects).  It requires a showing that the product did not

9    conform to the manufacturer's design at the time of manufacture.

10   <u>See Garrett v. Howmedica Osteonics Corp.</u>, 214 Cal. App. 4th 173,

11   190 (2d Dist. 2013) ("[A] product has a manufacturing defect if

12   the product as manufactured does not conform to the

13   manufacturer's design.").

14           Nothing in the record establishes the existence of a

15   manufacturing defect.  (Def.'s Mem. at 11.)  Summary judgment is

16   appropriate "against a party who fails to make a showing

17   sufficient to establish the existence of an element essential to

18   that party's case, and on which that party will bear the burden

19   of proof at trial." <u>Celotex</u>, 477 U.S. at 322.  "'[S]o long as

20   the losing party was on notice that [it] had to come forward with

21   all of [its] evidence,' summary judgment can properly be

22   entered." <u>MAI Sys. Corp. v. Peak Computer, Inc.</u>, 991 F.2d 511,

23   520 (9th Cir. 1993) (quoting <u>Celotex</u>, 477 U.S. at 326).

24           Plaintiff bears the burden of proving at trial that the

25   grab handle differed from its design at the time it was made.

26   Although the parties agree that one set screw was missing at the

27   time they inspected the grab handle, (<u>See</u> Buske Dep. at 32:17-

28   20), plaintiff has produced no evidence that the screw was

                                  13

1    missing at the time of manufacture and offers no reason for

2    thinking that the grab handle, as manufactured, differs from its

3    intended design.  Plaintiff fails to even mention a manufacturing

4    defect in its opposition, much less cite supporting materials

5    from the record as required by Rule 56(c).  To the extent

6    plaintiff relies on a manufacturing defect theory to establish

7    liability, no genuine dispute of material fact exists, and the

8    court will grant defendant's request for summary judgment with

9    respect to these claims.

10           IT IS THEREFORE ORDERED that defendant's motion for

11   summary judgment be, and the same hereby is, GRANTED with respect

12   to plaintiff's manufacturing defect claims and DENIED in all

13   other respects.

14   Dated:  October 6, 2014

15   _____

16   WILLIAM B. SHUBB
     UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

                              14